King *v.* Macon and Western Railroad Company.

New trial granted.

[ONONDAGA GENERAL TERM, October 1, 1861. *Mullin, Bacon, Allen* and *Morgan,* Justices.]

KING and others *vs.* THE MACON AND WESTERN RAILROAD COMPANY.

Section 2055 of the Code of Georgia, which provides that "when there are several connecting railroads, under different companies, and the goods are intended to be transported over more than one railroad, each company shall be responsible only to its own terminus, and until delivery to the connecting road, the last company which has received the goods as 'in good order' shall be responsible to the consignee for any damage, open or concealed, done to the goods, and such companies shall settle among themselves the question of ultimate liability," was evidently intended to limit the liability of a railroad company to its own terminus, where the contract is a general one, merely, depending on delivery of the goods to be transported with directions to carry beyond such terminus.

It neither affects the liability of companies beyond the bounds of the State, nor does it prevent the making of any special contract, where the same is made by a corporation doing business in the State. On the contrary, by section 2041 of the code of Georgia, such a corporation may make an express contract, and is then to be governed thereby.

Such an express contract is made, by a railroad company, when it receives cotton for transportation, and is reduced to writing by its agent, in a receipt given therefor, by which the company agrees to transport the same to New York, limiting its liability for loss by fire to a burning on the cars.

The general liability of a railroad company as a carrier of goods, independent of the statute of Georgia, where it receives and agrees to carry property to a place beyond the terminus of its own road, and such property is destroyed

King *v.* Macon and Western Railroad Company.

by fire while passing over a connecting road on the route to the place of delivery, has been repeatedly held and has been lately recognized and adopted by the Court of Appeals, in *Root* v. *The Great Western Railroad Company*, (45 *N. Y.* 524,) and *Maghee* v. *The Camden and Amboy R. R. Co., id.* 514.) *Per* INGRAHAM, P. J.

Accordingly, where a railroad company in Georgia, whose road terminated at Atlanta, where it connected with the Western and Atlantic railroad, received at one of its stations fifty-eight bales of cotton, consigned to parties in New York, and gave the consignors a receipt specifying that the cotton was " to be transported in turn to K. & Co., New York;" it was *held* that this was a special contract on the part of such company to carry the property to New York; and made it liable not only for its own default but for that of the other carriers on the line, and accountable for the value of a portion of the cotton destroyed by fire while in the possession of the Western and Atlantic Railroad Co. to whom it had been delivered for transportation.

APPEAL by the plaintiffs, from a judgment entered upon the report of a referee.

The action was brought against the defendant as a common carrier, to recover the value of six bales of cotton delivered to it for transportation, and destroyed by fire.

The defendant, by its answer, admitted that at the times in the complaint mentioned it was a foreign corporation, created by and under the laws of the State of Georgia, and alleged that on or about the 17th day of November, 1865, at Barnesville, in the State of Georgia, it received from the firm of Stafford, Blalock & Co., the fifty-eight bales of cotton mentioned in the complaint, consigned to O. K. King & Co., in the city of New York. That said cotton was received by it from the said firm of Stafford, Blalock & Co., under a special verbal contract, dated at Barnesville, Georgia, November 17, 1865. That by this contract it is provided that the defendant, and all connecting roads, shall be relieved from all liability for loss of said cotton by fire. That under this contract said cotton was received by the defendant, and safely transported to the city of Atlanta, in the State of Georgia, the terminus of the defendant's line of railroad, and there safely delivered by the defendant to the Western and Atlantic Railroad com-

pany, the next carrier on the route to New York. That on the delivery of the said cotton, by the defendant, to the said Western and Atlantic Railroad Company, all liability therefor, on the part of the defendant, ceased. That fifty-two bales of said cotton were safely transported to New York, and there delivered to the consignees thereof, O. K. King & Co. That on or about the 24th day of November, 1865, as the defendant was informed and believed, six bales of said cotton were destroyed by fire, while in possession of the said Western and Atlantic Railroad Company, with-out any fault or negligence on the part of said company, or on the part of the defendant, or of the servants or agents of the said respective companies. And the defendant averred that the said cotton was insured against loss by fire, by the consignees thereof, O. K. King & Co., and that the full price and value of the said six bales destroyed by fire as aforesaid, had been paid to them by the insurance companies. And the defendant denied that the plaintiffs had any title to sustain this action. And denied each and every allegation in the complaint contained not specifically admitted.

The action was referred to a referee, who found and reported the following facts, viz: That in the month of November, 1865, the plaintiffs were copartners in trade, carrying on business in the city of New York, under the firm name of O. K. King & Co. That in the same month the defendant was a railroad corporation, duly created by and under the laws of the State of Georgia, and a common carrier. That the defendant's railroad terminated at the city of Atlanta, in the State of Georgia, where it connected with the Western and Atlantic Railroad. That section 2055, article 2, chapter 3, title 3, part 2 of the code of the the State of Georgia, which, in the month of November 1865, was part of the law of the State of Georgia, is as follows: "When there are several connecting railroads, under different companies, and the goods are intended to

be transported over more than one railway, each company shall be responsible only to its own terminus, and until delivery to the connecting road; the last company which has received the goods 'in good order,' shall be responsible to the consignee for any damage, open or concealed, done to the goods; and such companies shall settle among themselves the question of ultimate liability."

That on or about the 17th day of November, 1865, at Barnesville, in the State of Georgia, a station on the line of the defendant's road, the defendant received from the firm of Stafford, Blalock & Co., a firm doing business in said place, fifty-eight bales of cotton, consigned to O. K. King & Co., New York, the plaintiffs in this action. That upon receipt of the said fifty-eight bales of cotton, the station agent of the defendant gave to the said Stafford, Blalock & Co., a receipt or agreement in words and figures following:

| MARKS. | BALES. | MACON AND WESTERN RAILROAD No. 6. |
|---|---|---|
| S. B. & Co.<br>O. K. K. & Co. | 58 | Received at Barnesville, Georgia, 17th November, 1865, from Stafford, Blalock & Co., fifty-eight bales of cotton, of which none are in bad order, marked as per margin, to be transported in turn to O. K. King & Co., New York. This company not accountable for loss by fire, unless burned on the cars.<br>                    Sd.            C. W. BROWN,<br>                                              Agent. |

That said receipt or agreement was thereupon transmitted by Stafford, Blalock & Co. to the plaintiffs, at New York, who made advances thereon. That the fifty-eight bales of cotton so received by the defendant from Stafford, Blalock & Co., were transported over the road of the defendant to its terminus, at Atlanta, in the State of Georgia, and there delivered in good order to the Western and Atlantic Railroad, which, at that point, connects with the road of the defendant. That fifty-two bales of said cotton were safely delivered to the plaintiffs in the city of New

York. That on or about the 24th day of November, 1865, six bales of said cotton, while in the possession of the Western and Atlantic Railroad, were destroyed by fire, on the cars, without any fault or negligence on the part of the defendant. That the value of said six bales of cotton was $1500 on the day of shipment, the 17th day of November, 1865, with interest from that date, and that the plaintiffs were the real parties in interest. That section 2041 of the code of the State of Georgia, which, in the month of November 1865, was part of the law of the State of Georgia, is as follows: "A common carrier cannot limit his legal liability by any notice given, either by publication or entry on receipts given, or tickets sold. He may make an express contract, and will then be governed thereby." And the referee found as conclusions of law, that the agreement to transport said cotton entered into by the defendant with Stafford, Blalock & Co. was made subject to section 2055, article 2, chapter 3, title 3, part 2 of the code of the State of Georgia, quoted in the fourth finding of fact herein; and that on delivery of said cotton by the defendant at its terminus to the connecting road, the responsibility of the defendant ceased; and that the defendant was entitled to judgment. And he reported accordingly; and that judgment be entered in favor of the defendant, and against the plaintiffs herein, for the costs of this action.

Judgment was entered in favor of the defendant, for costs; and the plaintiffs appealed.

*Allan Melville*, for the appellants.

The complaint set forth the receipt or bill of lading, precisely as found by the referee. The answer, under a sweeping denial, denied that there was any special written contract whatever, and set up a " special verbal contract;" the defendant, with the permission of the referee, so amending on the trial after having, in the original answer, alleged a written contract. The plaintiffs established a

written contract, viz., the receipt or bill of lading, and that it had been immediately sent to the plaintiffs at New York, who had advanced on the faith thereof.

I. The referee, under the plaintiffs' objection, had rejected previous evidence, offered by the respondent, tending to vary the contract of shipment as against the plaintiffs who had advanced on the bill of lading. But he permitted the respondent to evade all responsibility for the lost cotton under cover of section 2055 of the Georgia code, which the respondent was allowed to introduce to defeat the appellants' claim. The referee, in his first conclusion of law, found, that on delivery of the cotton by the defendant at its terminus, to the connecting road, the responsibility of the defendants ceased, the referee holding, as matter of law, that the contract of shipment was made subject to that section of the Georgia code. The referee erred in so holding. 1. The section 2055 is not prohibitory. It is simply declaratory of the common law as expounded in the Georgia courts, as is most, if not all, of the Georgia code. (*See* 36 *Georgia R.* 644.) It is manifest that its intention was to protect the Georgia railways from liability to carry to destination by the mere acceptance of freight marked beyond their own routes. A carrier could always limit his liability to his own route. The object of this section was to fix a uniform rule, in the absence of any agreement to the contrary, to apply to all shipments of railway freight without special agreement. The section forbids nothing—has no restraining effect, and has no application to express contracts. It is controlled by section 2041 of the same code, which authorizes a carrier to make express contracts. As to a carrier's contracts to deliver freight in another State, the Georgia legislature could not interfere to prevent them, even if it is conceded that Georgia could limit them to her own external lines. To subject the contract of shipment in this case to the narrow construction contended for, would

be a restriction of the right of commerce not conceded to the States. The constitution of the United States (*Art.* 1, § 8, *subd.* 3,) has empowered congress to regulate commerce "among the States," and the national courts have determined that the power is exclusive in the United States. This court must hold that section 2055 of the Georgia code has no application to the facts in this case.

II. If the defendant was not prohibited by the general provisions of the Georgia code, its authority to contract by special agreement to deliver freight beyond its terminus by using the roads of connecting lines, must be presumed, in this case, in the absence of any evidence to the contrary. Its charter is not in evidence. (*Schroeder* v. *Hudson River Railway*, 5 *Duer*, 55. *Maghee* v. *Camden and Amboy Railway*, 45 *N. Y.* 514. *Redfield on Railways,* § 197, *and cases cited.*) It is understood that the defendant does not dispute this proposition, standing alone and aside from the alleged controlling effect of the 2055th section of the Georgia code. But they insist that that section limits the liability of the defendant to the end of its route, a rule which, the defendant claims, is so firmly fixed by the local law that the defendant could not waive its operation by a special contract to deliver beyond their terminus. This interpretation is refuted in the first point.

III. The execution of the bill of lading by the defendant, and its acceptance by the consignors, concurrently with the delivery and receipt of the cotton, constituted a special contract between the parties for the carriage of the property. The defendant undertook the carriage for the whole distance between Barnesville and New York. (*See* 45 *N. Y.* 514.) It was executed when all the cotton was received by the defendant for transportation. It was such an express contract as the defendant was authorized to make by section 2041 of the Georgia code. In all the reported cases, both in England and America, where the question has arisen upon a bill of lading, issued

by the carrier concurrently with the delivery of the goods, such bill of lading has been held to be a special contract between the carrier and shipper.

IV. The defendant did more than receipt for freight addressed to a point beyond its own terminus. The marks on the cotton did not indicate the place of destination. That only appeared in the body of the contract of shipment. See margin of the bill of lading, where only the initials of the consignor and consignees appear. It is not material to inquire whether other marks, omitted from the receipt, or bill of lading, showed the place of destination, because the plaintiffs advanced on the bill of lading alone, which was the only evidence they had of what the marks were when they made the advance; of the contents of the *ex parte* way bill the plaintiffs had no knowledge. This circumstance alone takes this case outside of the class of American cases, particularly Connecticut decisions, (*Converse* v. *Norwich Co.*, 33 *Conn.* 166; *Elmore* v. *Naugatuck Co.*, 23 *id.* 457; *Naugatuck R. R.* v. *Waterbury Button Co.*, 24 *id.* 468;) where the assent of the carrier to carry to the ultimate destination, was not inferred from the mere acceptance of freight marked to a point beyond the carrier's own route, or by receipt, simply enumerating parcels and the marks thereon.

V. The delivery of the cotton at Atlanta, where the defendant's road terminates, to the connecting road *en route*, did not relieve the defendant from further responsibility. It was not a performance. The defendant was bound to safely convey and deliver to the plaintiffs at New York. The cotton was received by the defendant under positive contract to deliver it at New York, its ultimate point of destination, which only appears from the body of the receipt or bill of lading. The receipt or bill of lading, is an express contract and a "through receipt." It reads that the cotton was "to be transported in turn to O. K. King & Co., New York." In *Schroeder* v. *Hudson R. R.*

*Co.*, (5 *Duer,* 56,) the defendant's road terminated at Albany, but the receipt read, "to be forwarded by us to Chicago," and was held to be a contract to carry to Chicago. In *Peet* v. *Chicago and N. W. R. R.*, (19 *Wis.* 118,) the shipment was flour, and the receipt contained these words: "Contract from Neenah to New York— $2.25 per bbl." The defendant's road terminated at Chicago. The court said we fully adopt the interpretation placed upon these words by the counsel for the appellant, and think that if the contract were written out in full it would read: "The railroad company contracts to carry the 100 barrels of flour from Neenah, Wis., to New York, and there deliver them to the consignee for $2.25 per barrel." It seems, to a majority of the court, that this is the natural and reasonable construction to be placed upon these words, and that they show an express understanding, on the part of the defendant, to carry the flour to New York. The apparent conflict between the English and American cases relates to the evidence by which the contract to carry beyond the first carrier's route may be established, in the absence of an express contract. (*Story on Bailments*, § 535.) That difference is not material in this case. (*See Maghee's case, supra.*)

VI. The words "in turn," as used on the bill of lading, refer to time, and not to means of transportation. The shippers of freight were to be served in turn, i. e., in due order as their freight was received. (*See Worcester's Dictionary.*) The language is, "to be transported in turn to O. K. King & Co., New York." The words are not new or unusual. Nor are they used in a technical or peculiar sense, as applicable to the carrier's business. Therefore, no evidence was necessary to explain or illustrate them. (*Shaw, Ch. J.*, 20 *Pick.* 150.) It is easy to discover that the defendant's design, in inserting these words, was the supposed protection it would give it against responsibility for delays, which could be charged to excess of pre-

vious freight. If the contract were written out in full, it would read, "The cotton is to be forwarded to O. K. King & Co., at New York, as fast as freight having priority on the whole line will permit." The construction contended for on the trial, by the respondent, was as follows : "To be transported by each carrier on the line of carriage 'in turn.'" It is submitted that this interpretation cannot be supported by any reasonable argument, and must fail. It is a perversion of language.. It is contrary to the rule of interpretation, viz., that the terms of every written instrument are to be understood in their plain, ordinary and popular sense. (1 *Greenleaf's Ev.* § 278.) It is much the wiser course to adhere to the words, construed in their ordinary import, than to enter into an inquiry, as to the supposed intentions of the persons who used them. (10 *Barn. & Cres.* 520.) The use of the words does not fairly present a question of doubt, but if it did, the rule must apply, that where the intention is doubtful, the language of a contract must be taken most strongly against the party using it. (1 *Greenleaf on Ev.* § 278.)

VII. The defendant having issued a bill of lading, contracting specially to deliver the cotton at the ultimate place of destination, it is not material to inquire whether it received the freight for the entire route, or fixed it by agreement. Where there is no special contract to transport to destination, the courts have inferred a through contract, if the freight, for the entire route, has been received or fixed in one sum. But in this case, such circumstances would only be cumulative evidence of a through contract, sufficiently established by the bill of lading, without the support of such facts. (*See Muschamp's case,* 8 *M. & W.* 421.) The authorities cited by the defendant, on the trial, were mainly cases where the carrier gave no bill of lading, but simply accepted freight addressed to a point beyond his route, or the destination only appeared by marks, or the receipt merely enumerated marks, which the courts

have held not sufficient to imply a through contract, unless the freight for the entire route had been received by the first carrier in one sum, or fixed by him. Besides, on the 58 bales delivered at New York, the plaintiffs paid the freight, which it will be presumed was divided. (*Muschamp's case, supra.*)

VIII. The lost cotton was destroyed by a peril outside the exception in the bill of lading. The exception reads, "This company not accountable for fire, unless burnt on the cars." It was burnt in the cars, and the defendant is accountable, to use the precise words adopted by the contract. The words, "the cars," will be held to include all cars conveying the cotton *en route*, whether on the defendant's or any connecting road. This exception immediately follows the engagement of the defendant to deliver the cotton in the city of New York, and applies to a loss by burning on the cars, upon any road, while the contract of carriage is in force. It is commensurate with the scope and duration of the contract. (*Maghee* v. *Camden and Amboy R. R. Co.*, 45 *N. Y.* 514.) This clause will be construed most strongly against the defendant, for whose benefit it was made, according to the rule where words of exception or reservation are used. It is obvious that the design of the defendant in inserting this exception, was to protect itself from loss by fire occurring in depots. The defendant agreed to be liable if the cotton was burnt on the cars, but not elsewhere. During transit the cotton could, under ordinary circumstances, only be in depots or cars. The material inquiry is, was the cotton burnt in the cars? not, on what railway was it burnt? The defendant had contracted to deliver it to the plaintiffs at New York, and could employ what route it pleased. Had the loss occurred by fire in any depot on the route to New York, the defendant would be exempt, being within the exception. So the loss in any cars *en route*, makes it liable, whether the fire occurred in the cars on its own

road, or in the cars of a connecting road. *Maghee* v. *Camden and Amboy Railway*, cited above, is precisely in point. The contract was from Louisville to New York. "Fire in the depot" was excepted. The action was brought against a subsequent carrier, for goods burned in its depot, and the plaintiff insisted that the exception only enured to the benefit of the first carrier, who executed the bill of lading, and created no exception from the liability for such loss occurring eleswhere than in the depot of the first carrier. The Court of Appeals held that the exception was commensurate with the scope and duration of the contract, and applied to loss by fire in any depot on the route to New York, where the contract extended. The defendant, the court said, is to be regarded as having acted under and in subordination to the contract made with the first carrier, and can claim the benefit of any exemption to which the first carriers would have been entitled if the action had been brought against them. (*See also Manhattan Oil Co.* v. *Camden and Amboy R. R. Co.*, 52 *Barb.* 72.)

IX. The plaintiffs' title was made through the bill of lading. The plaintiffs acted on the faith of the bill of lading which is a *quasi* negotiable instrument. (1 *B. & Ad.* 712.) After it was in its possession, and after the defendant had accepted the cotton for transportation, and as against the plaintiffs the defendant is estopped from alleging that it is not a carrier for the whole route. In the language of Cowen, J., it is estopped to deny that it is a carrier for a distance commensurate with what it engages for. (*Weed* v. *Saratoga Railway*, 19 *Wend.* 534.) In *Choteoux* v. *Leach*, (18 *Penn.* 224,) it was held that where persons receive goods as carriers, and give a receipt and bill of lading, it is not competent for them to show by parol testimony that they are not common carriers for the entire distance stated in the bill of lading. In *Wilcox* v. *Parmelee*, (3 *Sandf.* 610,) it is held that "a contract to forward goods from one place to another and distant place, sub-

jects the party to liability as a common carrier for the whole route, although his whole transportation line extends only part of the distance, and a loss occurs over a portion of the route over which he was not interested.'" The defendant cannot be permitted to so conduct its business as to lead the public to regard it as a carrier for the entire route, without any intimation to the contrary. If it does so, it will be held liable for the whole route. (See Teall v. Sears, 9 Barb. 323, 324.) (a.) The defendant received and took charge of the goods, and as against the plaintiffs it must be presumed, according to the unqualified and plain terms of the bill of lading. In Foy v. Troy and Boston R. R., (24 Barb. 382,) it is held that if a railway receiving freight intends to limit its liabilities to its own road, it should provide for such limitations in its contract. And being a case of express contract, it is not material to inquire whether the defendant had existing arrangements with other connecting lines. (Perkins v. Portland Railway, 47 Maine, 573.) It must be presumed, in this case, that the defendant assumed the carriage for itself for the whole distance, hiring the service of other routes. (Teal v. Sears, 9 Barb 322.) (b.) The plaintiffs were not parties to the contract of carriage; nor were the consignors their agents. As strangers, their title was not acquired until the bill of lading was transmitted asking for advances. (Holbrook v. Wight, 24 Wend. 169.) The cotton was owned by the consignors, Stafford, Blalock & Co. They have testified that they obtained the bill of lading for the purpose of sending it to the plaintiffs at New York, to obtain advances. After transmitting the bill of lading asking for advances, the consignors could not have compromised with the defendant for the bales lost. (Burrell v. Rench, 4 McLean, 327.) Nor could they have stopped the cotton in transitu. (c.) The important and controlling facts are, that the bill of lading accom-

panied the letter asking for advances, which the plaintiffs proved, and that the advances were made thereon as the referee finds. (*See Meyer* v. *Peck,* 28 *N. Y.* 597, where this element was wanting. *Patton* v. *Thompson,* 5 *Maule & Selw.* 358, 359. *Haille* v. *Smith,* 1 *Bos. & Pul.* 563. *Sears* v. *Wingate,* 3 *Allen,* 104.) (*d.*) By the custom of merchants, bills of lading are commonly pledged, and the defendant must be presumed to have known that from the course of trade between the north and south, the bill would have been sent to a distance, and pledged for advances.

X. It may be confidently asserted that the referee erred in finding, as matter of fact, that the cotton was destroyed by fire in the cars, without any fault or negligence on the part of the defendant. There was no evidence whatever to support this finding. The exemption in the bill of lading did not cover fire in the cars, and the defendant's common law liability attached. It could only be overcome by showing that the destruction was caused by the act of God or the public enemies. This was not done, nor did the defendant make any attempt to do it. And the answer sets up no such defense. Carriers are held as insurers against fire, unless caused by lightning. (*Redfield on Carriers,* § 26.) As against the plaintiffs, who advanced on this bill of lading, the defendant has established no defense whatever; no possible state of proof applicable to the issues in this case will entitle the defendant to judgment, and it is not necessary, or even proper, that a new trial should be awarded. The defendant cannot, by any proof adapted to its own allegations, entitle itself to judgment in its favor. The facts are before the court, and judgment absolute should be given for the plaintiffs for the value of the cotton, which value has been found by the referee. (16 *N. Y.* 543. 17 *id.* 28.)

*Thos. L. Moore,* for the respondent.

*By the Court,* INGRAHAM, P. J.   The section of the code of Georgia (2055) which was admitted in evidence, was evidently intended to limit the liability of a railroad company to its own terminus, where the contract was a general one, merely, depending on delivery of the goods to be transported with directions to carry beyond such terminus.   It neither affected the liability of companies beyond the bounds of the State, nor did it prevent the making of any special contract, where the same was made by a corporation doing business in the State.   On the contrary, by section 2041 of the code of Georgia, such corporation might make an express contract, and was then to be governed thereby.

Such express contract was made by the defendant when it received the cotton for transportation, and was reduced to writing by its agent in the receipt given therefor, by which it agreed to transport the same to New York, limiting its liability for loss by fire to a burning on the cars. The way bill also shows that the company received the cotton for transportation to New York according to the receipt.

The general liability of the defendant, independent of the statute of Georgia, has been repeatedly held, and has been lately recognized and adopted by the Court of Appeals, in *Root* v. *The Great Western Railroad Company,* (45 N. Y. 524,) and *Maghee* v. *The Camden and Amboy Railroad Co., id.* 514.)

Various cases are cited, in the opinions delivered in those cases, showing that such rule exists in England, and in this country.   The contract, in the latter case, was similar to that in the case under consideration; and if it is to be construed as a special contract on the part of the defendants they would be liable on such an undertaking beyond the terminus of their own road.   The agreement referred to is such a special contract on the part of the

defendants, and makes them liable not only for their own default, but that of the other carriers on the line.

In such a case section 2055 of the code of Georgia does not apply, and the defendant cannot avoid the liability of its special undertaking thereby.

The referee appears to have based his decision solely on the effect of the section of the code of Georgia (2055) as controlling the written contract of the defendant. In this, I think, he erred.

Judgment reversed, and new trial ordered; costs to abide the event.

[FIRST DEPARTMENT, GENERAL TERM, at New York, April 1, 1872, *Ingraham*, P. J., and *Cardozo*, Justice.]