HENRY M. ISAACSON, APPELLANT, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, RESPONDENT.

*Common carrier — when not liable for injury to baggage occasioned by a connecting carrier's negligence.*

The plaintiff, a resident of the city of New Orleans, purchased tickets for himself and family to Niagara Falls, and for their return to New Orleans over what was called the Mobile route. From Niagara Falls he purchased .tickets to New York city and for his return to the Falls over the defendant's road. When about to leave New York he went to the baggage room in the defendant's depot in that city, showed his return tickets and asked for checks for his baggage over the route indicated upon them for New Orleans. The baggage master, after having examined the tickets, delivered to the plaintiff two checks, which the latter, upon returning to the hotel, gave to his wife for safe keeping. Neither the plaintiff nor his wife examined the checks until after their arrival in New Orleans, when it was found that the baggage master had checked the trunks for transportation over a route from Niagara Falls to New Orleans different from that indicated on the plaintiff's tickets. The trunks and their contents were found, upon their arrival at New Orleans, to have been greatly damaged by reason of an accident which had occurred in Mississippi upon one of the roads forming the route over which they had been carried.

In an action brought by the plaintiff against the defendant to recover the damages he had sustained:

*Held*, that he was not entitled to recover.

APPEAL from a judgment in favor of the defendant, entered upon a dismissal of the complaint ordered at the circuit.

*Horace E. Deming*, for the appellant.

*Frank Loomis*, for the respondent.

BRADY, J. :

This action was brought to recover damages for the loss of the plaintiff's baggage. It appears that he was a resident of New Orleans, in the State of Louisiana, and on or about July 1, 1876, left New Orleans for a journey to the north and east. At that city he purchased for himself and family tickets to Niagara Falls, in this State, and to return, on what was known as the " Mobile route," which seems to have been by way of Montgomery, Nashville, Louisville, Cincinnati, Cleveland and Buffalo, and at Niagara

Falls he bought tickets to the city of New York and to return, over the New York Central and Hudson River Railroad. Upon the route thus indicated the plaintiff and his family traveled from New Orleans to New York. On the 17th of August, 1876, the plaintiff, who was in the city of New York and about to return with his family to New Orleans, called at the baggage room of the defendant at the Grand Central Depot in this city and, showing the return tickets already mentioned, asked for checks for his baggage over the route indicated on those tickets to New Orleans. The baggage consisted of two trunks containing the wearing apparel of the plaintiff and his family. The baggage master of the defendant asked to see the plaintiff's tickets, examined them, and inquired when the baggage would be ready and was told that it was then ready, whereupon he gave the plaintiff two checks for his trunks from New York to New Orleans. The plaintiff placed the checks in his pocket without examining them, and, on returning to his hotel, handed them to his wife for safe keeping. The plaintiff and family on the same day commenced their return journey from New York to New Orleans. They traveled by the ticketed route, and their return tickets were accepted as good for their passage by the train conductors on the lines already mentioned. Prior to the arrival of the train at New Orleans, the checks (which in the meantime had remained under the control of the plaintiff's wife, and had not been examined by either her or the plaintiff) were handed to the agent of the New Orleans Transfer Company with directions to deliver the baggage at the plaintiff's residence. The next day the plaintiff was sent for from the railway station to identify two trunks which were in a damaged condition, and were supposed to be his property, and which were recognized by him as his own. They were then opened, and their contents carefully examined; they were found to be utterly worthless, and the damage was appraised. .

The trunks, it appears, were checked by the defendant's baggage master for conveyance over a route beyond Buffalo different from the one indicated on the plaintiff's return ticket, namely, over the Great Western, Michigan Central, Chicago, St. Louis and New Orleans Railroad, and while in transit over the latter road had been damaged, as already mentioned, and by an accident near Tugaloo, Mississippi.

Upon these facts being disclosed, which constituted the plaintiff's case, a motion was made to dismiss the complaint, and it was granted. The grounds upon which the dismissal was asked were as follows:

*First.* That no delivery of the baggage in question to the defendant had been proven.

*Second.* That it does not appear that any act of the defendant's was the cause of the loss or injury to the articles in suit.

*Third.* That the defendant's agent had no right to check, or undertake to check the plaintiff's baggage beyond the point to which the plaintiff had tickets purchased of defendant, and the act of defendant's agent in that respect was gratuitous and unauthorized.

*Fourth.* That the negligence of the plaintiff contributed to the miscarriage and injury to his baggage.

It appears that the defendant received a compensation for the carriage of the plaintiff's family and baggage over their road from Niagara Falls and back again, and none for their carriage beyond the terminus of their own line; and it also appears that the plaintiff had secured his return tickets from Niagara Falls by the "Mobile route," already described. No special contract was made with the defendant to carry the plaintiff and his family or their baggage beyond the terminus of their own line. No contract, indeed, at that time would seem to have been necessary, because the plaintiff had already selected his route, and secured his means of transportion. The plaintiff's application at the Grand Central Depot to the man in charge of the baggage room was to have his baggage checked to New Orleans, according to the tickets that he had, which was done, but not over the roads indicated by them. The checks which were given to him, and which he failed to examine, expressly stated that they were by way of the Great Western Railway of Canada to Detroit, and thence over intermediate lines to the city of New Orleans. The defendant, according to the evidence in the case, was under no obligations to check his baggage beyond its own terminus, in the absence of a special agreement to that effect, or proof of a partnership existing between it and the other lines, which would impose such a duty upon it, and incurred no obligation therefor, under the circumstances, by checking them over the route indicated by the check. It was the plaintiff's duty to examine

the checks and thus to advise himself of their character, and to ascertain whether the baggage was to be carried over the routes indicated by the tickets which he says he exhibited to the baggage master. In the absence of any proof of custom or contract requiring that performance, the checking would seem to have been a matter of curtesy. It is very clear that it was not founded on any moneyed consideration, according to the evidence disclosed, the plaintiff having secured his passage by payment to the defendant only for transportation over its line.

It is true that the baggage master, according to the testimony of the plaintiff, selected a route other than that mentioned by the latter, but as no duty rested on the defendant, as already suggested, to check the baggage to any point beyond that for which the defendant had issued tickets, and there being no evidence to show that the baggage master had any authority to give checks beyond its lines, his act of checking beyond it must be regarded as one of curtesy only to save the plaintiff the inconvenience of rechecking his baggage at Niagara Falls, at which point the duties of the defendant under their contract ceased.

It is a well established rule in this State that, in the absence of a special contract or of a partnership existing between connecting lines, the carrier is only responsible to the extent of his own route, and for safe delivery to the next connecting carrier. In such a case the carrier is a forwarder merely from the terminus of his own line, and is, therefore, bound to deliver only at the terminus of his own line according to the established usage of the business in which he is engaged. (*Root* v. *The Great Western Railroad Company*, 45 N. Y., 530; *Condict* v. *The G. T. R. R. Co.*, 54 id., 500; *Sherman* v. *H. R. R. R. Co.*, 64 id., 260; *Faulkner et al.* v. *Hart et al.*, 82 id., 422.)

As said in *Sherman* v. *The Hudson River Railroad Company*, in the case of transportation of property over several railroads constituting a continuous line, none of the railroads can be said to be agents of the owner, each is exercising an independent employment and is a contractor with the owner, the contract being either expressed, or such as the law implies, and each is responsible for his own negligence.

According to these rules the defendants could be held responsible

only for damage caused by their own negligence, and none is charged upon them in this case.

If the delivery of the checks, under the circumstances disclosed by the baggage-master of the defendants, can be regarded as an obligation of any kind beyond their route, it is that they would deliver the baggage to the connecting line indicated upon them, inasmuch as the plaintiff received the checks without objection, and is, therefore, chargeable with notice of their contents, and is bound by their terms. (*Hill* v. *Syr., Bing. and N. Y. R. R. Co.*, 73 N. Y., 351.) The plaintiff's remedy would seem, therefore, to be against the company through whose negligence his baggage was destroyed.

For these reasons the judgment should be affirmed.

DAVIS, P. J.:

The contract of defendant with plaintiff, as shown by the tickets, was to transport him and his family to Niagara Falls. The contract shown by the checks was to transport the baggage to Niagara Falls and then deliver it to the connecting line of the route to New Orleans indicated on the checks. These contracts were performed, and the baggage, when delivered under the latter, was uninjured. The railroad companies constituting the route, on receiving the baggage, respectively became responsible to plaintiff, as carriers, for its safe carriage.

No responsibility for their performance of their contract rested upon the defendant. The injury that happened was not occasioned by any fault or negligence of defendant, nor by any failure on its part to perform its contract as expressed on the checks. Under the settled authorities of this State, no right of action exists in this case against the defendant, and the question of plaintiff's negligence in not examining his check is not of any practical importance.

I concur, therefore, in the affirmance of the judgment.

DANIELS, J., concurred.

Judgment affirmed.