EDWARD SPRAGUE, JR. *v.* JOHN SMITH.

*Railroad. Carriers. Liability of trustees and others in possession of, and operating a railroad, as carriers of freight and passengers over connecting roads.*

A person having the possession and control of, and actually operating a railroad, is liable for injuries to passengers or freight occasioned by his misconduct or negligence, or that of any of the operatives under his control, to the same extent the railroad company would be were they in possession and running the road. This rule applies to lessees, to persons acting as trustees for mortgage creditors of the company, and also to persons in possession who are mere intruders.

Consideration of the different rules of liability of railroad companies as carriers of freight and of passengers beyond the lines of their own roads.

A carrier of passengers by railroad, who rightfully runs his cars upon the railroad of another, over which he has no control or right beyond that of running his own cars upon it, is not liable for injuries sustained by his passengers while upon that road, which are occasioned, without his fault, by the misconduct or negligence of the operatives of that road, over whom he had no control.

ACTION ON THE CASE to recover damages for injuries received by the plaintiff as a railroad passenger of the defendants. The writ originally issued against Charles O. Whitman and John E. Thayer, as co-defendants with Smith, but as to them there was a *non est* return. The defendant Smith plead the general issue, which was tried by jury, June Term, 1856,— POLAND, J., presiding,— when the following facts appeared :

The three defendants named in the plaintiff's writ were trustees of what are called the first mortgage bonds of the Vermont

Central Railroad Co., under a mortgage executed by that company October 20, 1851. That company having failed to pay the interest on said bonds, said trustees for that reason, and at the request of the company, took possession of the said Vermont Central railroad on the first day of July, 1852, and occupied and operated the same until after December, 1852, and while so in possession they had an arrangement with the Northern New Hampshire Railroad Co., and with the other companies on the lines between Vermont and Boston, by which the freight received upon the Vermont Central road was carried through to Boston on their own cars, over said Northern and other roads, and a certain division of the freight was made between them. By the arrangement between the Central and Northern New Hampshire roads, the Central furnished their own conductor and brakeman, when their trains run over the Northern road, but the Northern Railroad Company furnished the engines and engineers to operate them. The plaintiff's evidence tended to prove that by the agreement between the Vermont Central Company and Northern New Hampshire Company, and which was in force and subsisting while said trustees were operating the road of the former, they were to be responsible and make good all damages which should happen to said trains while on said Northern road, or to the freight or passengers thereon. The defendant's evidence tended to prove that by the contract and arrangement between them they were only to be liable for such damages as should be caused by the negligence of their own employees ; and were not to be liable for any damage caused by the negligence of persons employed by said Northern Company.

It was proved that on the Central road, while the defendants had possession of the same, as well as before, it was the practice of the road to take cattle to carry to Boston and other cattle markets in that vicinity, and to receive the full freight on the same, and give waybills or bills of lading to the owners, and, when any person had a full car load of cattle sent, to carry the owner or some other person to take care of the cattle, without any additional charge, and that with each cattle train was a saloon car fitted up for the use of such owners of cattle. The plaintiff further proved that on the 12th of December, 1852, he and one Leonard Kibbee were the owners of two car loads of cattle, and on that day loaded them

in two of the defendants' cars, and paid the freight on them and took a waybill for the same to Medford, Mass.; that the train left South Royalton on the same day, and the plaintiff and Kibbee went along with said train in the saloon car, according to the custom and practice of the road; that they proceeded as far as Danbury, New Hampshire, a station on the Northern New Hampshire road, and were waiting on the track for the passenger train to pass said cattle train, when a freight train belonging to the Northern New Hampshire road came up behind and carelessly and negligently run into said saloon car, and by the collision the plaintiff, who was in the saloon car, was seriously injured.

The defendants' counsel insisted and requested the court to charge the jury that the trustees being in possession of and operating the road merely as agents for the bond holders, could not be made personally liable; and that as the injury was sustained by the carelessness and negligence of persons in the employ of the Northern New Hampshire Company, and not in the employ of the defendants', they could not be made liable, especially if, by the contract existing between the defendants and said Northern road, the Northern road should bear the loss. But the court declined so to charge, but did charge that as the defendants were actually in possession and operating the Central road, they would be personally liable if a case was made out by the plaintiff which would make the corporation itself liable if they were running the road; and that as it was conceded that some arrangement existed between the defendants and the Northern New Hampshire Company, by which the defendants had the right to run their cars and freight over the Northern road, and the defendants having received the plaintiff and his cattle, and undertaken to transport them safely over the Northern road, the plaintiff's remedy for any injury sustained on said latter road by the carelessness or negligence of its operatives, would be against the defendants, the party with whom he contracted; and that it was immaterial what were the particular arrangements between the defendants and the Northern Company as to who should sustain the loss for any damage on that road.

To this charge, and to the refusal of the court to charge as requested, the defendants excepted.

Verdict for the plaintiff.

*J. P. Kidder* and *Peck & ·Colby,* for the defendants.

I. The defendants were the agents of the Central Railroad Company and of the first mortgage bondholders. As such they operated the road, which was known to the public. They cannot be made *personally* responsible to the plaintiff. The remedy should have been sought against the principal, the Railroad Company.

II. A carrier of passengers is only responsible for his own want of care and that of his employees, and not for the negligence of third persons, over whom he has no control. The case shows that the train was the defendants' train, under the control of their conductor, and having the right to pass over the Northern New Hampshire road. While thus lawfully on that road the train was run into by another train, over which the defendants had no control, and the plaintiff was injured without any fault on the part of the defendants. For this the defendants are not responsible. The plaintiff's remedy is against the New Hampshire company ; *Boyce* v. *Anderson,* 2 Peters 150 ; *Hood* v. *N. H. & N. York R. Co.,* 22 Conn. 1 ; *Bridge* v. *Grand Junction Co.,* 3 Mee. & Welsby 244.

*W. Hebard,* for the plaintiff.

I. The defendants had the entire charge and control of the road. They contracted in their own names, and not in the name of the corporation. The property, effects and earnings of the road were in their keeping, and could not have been attached in a suit against the corporation.

II. The defendants contracted to carry the plaintiff and his freight from South Royalton to Medford, Mass., and gave a waybill and took pay for freight to that place, and if they did not intend to be responsible for damage beyond the line of their own road, they should have so stipulated in the contract, and not having done so, their liability continued until the goods arrived at their destination ; *Hyde et al.* v. *Navigation Co.,* 5 Term 387 ; *St. John & Fonsey* v. *Van Stanvord et al.,* 25 Wend. 660.

2. In this case the defendants had an arrangement by which they used the Northern road, and run their own cars, and furnished a part of the help to run the engine and cars ; *Noyes* v. *R. & B. R. Road Co.,* 27 Vt. 110.

III. The defendants were common carriers, and as such liable to the same extent that common carriers are in other cases ; 2 Steph. Nisi Prius, 961. Common carriers are regarded as insurers against every injury except such as are caused by the " act of God or the King's enemies ; " 2 Stephens' Nisi Prius 964 ; 1 Term Rep. 27 ; 5 ib. 389.

The contract being with the defendants the plaintiff can only look to them for his damage. The defendants can seek such relief from the Northern road, as their arrangements will afford them.*

IV. Any arrangement that the defendants may have made with the Northern road with reference to the use of their road can only affect the parties to that arrangement. It cannot affect the plaintiff, who was no party to the arrangement and had no knowledge of its terms.

The opinion of the court was delivered by

REDFIELD, CH. J. I. The defendants are trustees for the benefit of certain bondholders of the Vermont Central Railroad, and as such, assignees of the company. The first question made in the case is, whether the defendants are personally liable upon the contracts made by the operatives upon the road, or for their negligence or misconduct, while they continue to operate the road, and receive freight and pay for carrying passengers, for the benefit of the cestuis que trust.

It is well settled in practice, and by repeated decisions, that the lessees of railroads are liable, to the same extent as the lessors would have been, while they continue to operate the road.* Indeed there can be no question, we think, that a mere intruder into the franchise of a railway corporation, who should continue to use it for his own benefit, would be liable to passengers, and the owners of freight who should employ him, to the same extent precisely as the company itself, while continuing the same business. Any other view of the liability of such intruder would be to allow him to allege his own wrong in his defense. And we can see no reason why the defendants are not liable to the same extent as the company would have been, and upon similar grounds to those upon which lessees, or any others exercising the franchise of the company, for the time, must be ; that is, that they are the ostensible

parties, who appear to the public to be exercising the franchise of the company. It would be perplexing in the extreme to require strangers, suffering injury through the negligence of operatives under the defendants' control, to look beyond the party exercising such control. The party having this independent control is in general liable for the acts of those under such control, whether of contract or tort.

II. As the defendants were interested in the transportation of the freight, and took pay and gave tickets through, they are, *prima facie*, liable for the delivery at the point of destination.

But in regard to carrying passengers the rule is different, we apprehend. These through tickets, in the form of coupons for each successive company, which are purchased of the first company, import no contract, ordinarily, to carry the passenger beyond the line of the road of the first company, so far, at least, as they are concerned. The baggage of passengers may come under the same rule in regard to conveying beyond the first company's line, which freight does, as the same general liability exists. But through passenger tickets are to be regarded as distinct tickets for each road, and unless the road check baggage through, it is questionable, perhaps, how far they are liable for losses beyond their own limits. And the contract between the companies which commonly exists in regard to the division of the price of the through ticket, constitutes no such partnership, probably, as will render each company liable for the whole route. The first company is, in such case, looked upon as the agent of the other companies for selling their tickets, and the contract requires no different construction from one where the tickets of one company are sold at the stations of other companies; *Hood* v. *N. Y. & N. H. R.*, 22 Conn. 1; S. C. 502; *Ellsworth* v. *Lartt*, 26 Alabama 733.

And in the present case there seems to have been no ground to question that the extent of the defendants' contract would oblige them to carry the freight through, as common carriers, which will make them liable for all injuries not caused by inevitable accident or the public enemy.

And in regard to the carrying the plaintiff as a passenger upon the freight train, in the saloon car provided for that purpose, the contract for carrying will extend throughout the route, the same as

that in regard to freight. The defendants throughout the route, and of course at the point where the injury occurred, owed, by virtue of their contract, to the plaintiff, the ordinary protection which is required of common carriers of passengers. But this is not the same as that which common carriers of freight stipulate for. All that common carriers of passengers stipulate for in the common case of carrying passengers, is to exercise the utmost care that no injury befall those who entrust themselves to their custody. This does not include such perils as occur wholly without the agency of the carrier, unless there is some want of care in escaping from the consequences of such perils; *Camden & Amboy R.* v. *Burke,* 13 Wendell 611.

We do not perceive that this rule of liability could make the carrier of passengers liable for the act of a party over whom he had no control. If the act causing the injury were that of a servant or operative employed upon the train carrying the plaintiff, although such operative were furnished and paid by another company, as the engineer in the present case, the carrier is undoubtedly liable. So, too, if the injury is caused by the misconduct of other servants of the same carrier, who is carrying the plaintiff, while operating other trains, the carrier is liable. But he cannot be regarded as liable, we think, for all the acts of all the operatives of the companies over whose roads he carries the plaintiff, unless some connection between the roads, of a character similar to that of general partnership, or the consolidation of their interests in the carrying business is shown, which was not done in the present case.

. It would not be pretended that a carrier of passengers, by coach, is liable for a mere tort committed upon such passengers, in the course of the transit, as by another carriage coming in contact with the carrier's vehicle, or by an assault of a stranger.

It may be true that while the defendants were carrying the plaintiff upon their own road they may be liable for an injury to him by reason of an intrusion of another carriage upon their track, since the law enforces upon them the duty of keeping their track clear. But in those cases, where other companies have the right by law to run their carriages upon the track of the defendant's road, by paying toll, as is common in England, and not

uncommon in this country, in point of right, although not done practically to any great extent, it has never been held that one company is liable to passengers carried by them for injuries happening through the fault of other companies, while rightfully upon the same track, and without any fault on the part of the first company. This principle, it seems to us, must control the present case. The defendants' contract only bound them for the skill and diligence of their own operatives, and those under their own control; *Bridge* v. *Grand Junction Railroad*, 3 M. & W. 244; *Robinson* v. *Cone*, 22 Vt. 213; *Thoroughgood* v. *Bryan*, 8 Com. Bench 115.

The plaintiff knew before entering upon the defendants' train that he would be exposed to those perils. They are incident, of course, to all railway traveling, and especially upon roads with only a single track. And knowing that this train was to be carried over other roads, where the defendants had no exclusive control, he must have understood, or was bound to understand, that the common contract for carrying passengers would not indemnify him against such perils. He must then, we think, look to the company having the control of those by whose negligence he was injured. These persons were no more under the control of the defendants than of the plaintiff, and there is no reason why the defendants should take the risk of their good conduct, more than that the plaintiff should, unless they so stipulated.

Judgment reversed and case remanded.