Noah Root, Respondent, *v.* The Great Western Railroad Company, Appellant.

The last paragraph of section 9, act of 1847, with reference to the liability of connecting railroads (chap. 270), does not apply to intermediate railroads, but only to the road which first receives the goods. Peckham, J., *contra.*

Where a railroad company agrees to carry property beyond the terminus of its own road, and receives the goods under such an agreement, it is liable as a common carrier, for the default of the road running in connection with it, on the route to the place of delivery. The statute of

1847 (chap. 270, § 9) is a mere legislative authorization of such agreements. RAPALLO, J.

But where the company merely receives goods marked for a place beyond the termination of its own route, in the absence of proof of an undertaking, express or implied, to carry the goods to their final destination, or of a partnership between the carriers, the company is bound only for the due delivery of the goods to the next carrier on the route. The statute of 1847, has no application in such a case. RAPALLO, ALLEN, and FOLGER, JJ. (CHURCH, Ch. J., and GROVER, J., *contra*).

(Argued April 28th; decided May 23d, 1871.)

APPEAL from the judgment of the General Term of the Supreme Court, of the late seventh judicial district, affirming the judgment of a referee in favor of the plaintiff. (Reported below in 2 Lans, 199.)

The defendant was a Canadian corporation and a common carrier between Suspension Bridge, in the State of New York, and Detroit, in the State of Michigan. Its route was from Suspension Bridge by rail to Windsor, Canada, and thence across the Detroit River by ferry to Detroit. It had arrangements with the Michigan Southern Railroad Company, whereby the latter received from the defendant, at Detroit, goods destined for places west of that point, and collected the freight for the entire transportation of the property at its final destination, and four times each month a settlement was had, and the Michigan Southern Railroad Company paid to the defendant its freight moneys for the transportation to Detroit. In this manner, the roads of the two companies connected at Detroit, but no community of interest or partnership between the two companies was shown.

On the 14th of April, 1866, the plaintiff delivered to the New York Central Railroad Company, at Victor Station, New York, a box of goods marked "Noah Root, Burr Oak, Branch county, Michigan," upon the express contract that that company should transport the box to its warehouse at Suspension Bridge, and should not be liable for any loss of,

or injury to, such property, after it should be sent from said warehouse.

The New York Central Railroad Company carried the property safely to Suspension Bridge, and there delivered it to the defendant, who received it on the 18th of April, directed as before stated.

Burr Oak lies west of Detroit, on the line of the Michigan Southern railroad.

The box was received by the defendant without any express contract or limitation of liability, and in the ordinary course of its duty as a common carrier.

On the 26th of April, the defendant delivered the box to the Michigan Southern Railroad Company for carriage to Burr Oak, by delivering it at the warehouse of that company at Detroit, the customary place for the delivery of freight arriving at Detroit by the defendant's line and destined to places on the line of the Michigan Southern Railroad Company.

The referee found that the goods were duly delivered by the defendant, and without unnecessary delay, to the Michigan Southern Railroad Company, for carriage to Burr Oak, and that said company duly received the same at its warehouse. It was also found that the invoices were not delivered, or a receipt taken for the goods at the time, for the reason that the agent of the Michigan Southern Railroad Company could not attend to the delivery at that time, and the next morning was agreed upon for the delivery of the invoice and receipts.

On the night of the 26th of April, the warehouse of that company and the property in question, which was therein, were destroyed by fire without any fault on the part of either of the companies. Other facts and the findings of the referee are specifically stated in the opinion.

On these facts the referee decided that the plaintiff was entitled to recover, and the judgment on this decision was affirmed at the General Term.

*E. C. Sprague*, for the appellant.  Where there is is no evidence to sustain the finding, it may be reviewed in this court.  (*Mason* v. *Lord*, 40 N. Y., 477.)  On the question of defendant's liability.  (*Van Santvoord* v. *St. John*, 6 Hill, 157; *Hood* v. *N. Y. and N. H. R. R. Co.*, 22 Conn., 16, 502; *Nutting* v. *Conn. R. R. Co.*, 1 Gray, 502; Pierce on Amer. R. R. Law, 501, *et seq.*; *Wright* v. *Brighton*, 22 Barb., 561; *Stratton* v. *N. Y. and N. H. R. R. Co.*, 2 E. D. Smith, 184; *Wiebert* v. *E. R. Co.*, 2 Kern., 255; *McDonald* v. *West. R. R. Co.*, 34 N. Y. R., 497; *Goold* v. *Chapin*, 20 N. Y., 259; *Johnson* v. *N. Y. C. R. R. Co.*, 33 N. Y., 610; 1 Amer. Rep., 78; 57 Barb., 516; 28 Barb., 485; 34 N. Y., 497; 25 N. Y., 364; 3 Kern., 572.)  On the question of agreement between the two companies.  (99 Mass., 220; 11 Allen, 295; 33 Conn., 166.)  The complaint alleged no cause of action under the act of 1847, and no recovery can be had.  (*Hempstead* v. *N. Y. C. R. R. Co.*, 28 Barb., 485.)

*Quincy Van Voorhis*, for the respondent.

Rapallo, J.  The findings of the referee, as set forth in the case, differ somewhat from those in the report, and contain three statements of fact which are excepted to on the ground that there was no evidence to sustain them, viz. : 1st. That the defendant had an agreement with the Michigan Southern Railroad Company to carry freight along its line west. 2d. That the two companies had connecting roads at Detroit. And, 3d. That the defendant received the property in question at Suspension Bridge "to carry and transport to its destination of Burr Oak."

It has been heretofore held that a finding without any evidence to sustain it can be reviewed in this court.  (*Mason* v. *Lord*, 40 N. Y., 477; *Putnam* v. *Hubbell*, 42 N. Y., 106.)  There was no evidence tending to prove any such agreement between the defendant and the Michigan Southern Railroad Company for the transportation west of Detroit of goods brought to that place by the defendant, as would constitute

the Michigan Southern Railroad Company, the agent of the defendant in such transportation, or create any partnership between the two companies; and if the finding is intended to convey the idea that the agreement of the Michigan Southern Railroad Company was to carry freight for or upon the responsibility of the defendant, it is wholly unsupported by the evidence, and cannot be regarded as properly in the case. But such is not the necessary construction of the finding. The evidence establishes merely that property arriving by defendant's railroad at Windsor and destined for places on the line of the Michigan Southern road was habitually brought across the river from Windsor to Detroit by boat, landed on the dock, and carried by trucks to the premises of the Michigan Southern Company, and there delivered to it with the invoices; that it was the practice of the defendant to charge to the Michigan Southern Company the freight on all goods so delivered to it and to take receipts for the goods; that the last named company collected the entire freight at the place of final destination, and settled with the defendant four times a month for the freight payable to it for the transportation to Detroit; that as soon as the goods were delivered to the Michigan Southern Company, it became liable to the defendants for the back freight, and if lost, the Michigan Southern Company had to bear the loss.

The finding, therefore, cannot be construed to go farther than to establish that there were arrangements between the two lines for the delivery to and receipt by the Michigan Southern Company of goods brought by defendant's line to Detroit, to be forwarded from thence to places on the line of the Michigan Southern railroad, and that in so receiving the goods, the latter company assumed the payment of the back freight thereon. In so delivering the goods, the defendant acted simply as a forwarder, and its liability is not increased by giving credit to the Michigan Southern Railroad Company for the back freight until settling day, instead of collecting the freight on each parcel at the time of delivery to the last named company.

The next finding excepted to is that the companies had connecting roads at Detroit for the transportation of passengers and property for hire through Michigan.

This finding is sustained by evidence that a connection was made between the two roads by means of the ferry boat and wharf, as before stated. It does not establish that there was any joint business carried on by the two roads, but merely that a physical connection was formed by the means described in the evidence. The roads might run in connection and together cover an entire distance, each company being a carrier over its own road only. (12 N. Y., 248.)

The third finding excepted to is that the New York Central Company delivered the property in question to the defendant at Suspension Bridge, and the defendant then and there received the same "to carry and transport to its destination of Burr Oak," etc.

The only evidence contained in the case in support of this finding, is the admission of the parties on the trial that the goods in question were shipped at Victor, Ontario county, N. Y., and that the defendants received them from the agents of the New York Central railroad in charge of their warehouse at Suspension Bridge, in Niagara county, together with the proof that the box containing the goods was marked "Noah Root, Burr Oak, Branch county, Mich."

It is further found by the referee, that the goods were received by the defendant without any express contract or limitation of liability, and in the ordinary course of its business and duty as a common carrier, and there is no evidence of any express contract as to their transportation by the defendant. Unless, therefore, the receipt of goods thus marked, in the ordinary course of business of a carrier, raises by operation of law an implied contract to carry them beyond the line of the carrier receiving them, and to deliver them at the final destination designated by the marks, there is no foundation for the finding of any such contract.

The English authorities hold that in such a case the company first receiving goods marked for a particular place,

without expressly limiting its responsibility, undertakes *prima facie* to carry them to their destination, even though beyond the limits of the company's route, and is to be regarded as a carrier throughout the entire route; and that this rule applies when the goods are directed to points even beyond the limits of England; and the English cases have carried the rule so far as to hold the contract is exclusively with the first company, and that there is no right of action in favor of the owner against any of the subsequent companies on the route. (*Muschamp* v. *Lancaster and P. R. W.*, 8. M. & W., 421; *Watson* v. *Ambergate R. W.*, 3 Eng. L. & E., 497; *Scothorn* v. *S. Staffordshire R. W.*, 8 Exch., 341; *S. C.*, 18 Eng. L. & E., 553; *Wilson* v. *York R. W.*, 18 Eng. L. & E., 557; *Crouch* v. *London and N. W. R. W.*, 25 Eng. L. & E., 287; *Bristol and Ex.* v. *Collins*, 7 Ho. Lds. Cas., 194.)

But a different rule has been adopted in this and other States of the Union, and it is here held that the receipt of goods marked for a place beyond the terminus of the carrier's route does not import a contract to carry them to their final destination; but that, in the absence of a special contract, and of a partnership between the connecting lines, the carrier is only responsible to the extent of his own route, and for the safe delivery to the next connecting carrier; that in such a case the carrier is merely a forwarder from the terminus of his own line, and that where goods thus marked are delivered to a carrier, unaccompanied by any particular directions, except such as might be inferred from the marks themselves, the carrier is only bound, at the terminus of his own line, to deliver them according to the established usage of the business in which he is engaged. (*Van Santvoord* v. *St. John*, 6 Hill., 158, 161, 162; *Jameson* v. *C. & A. R. W. Dist. Ct. Phila.*, 4 Am. L. Reg., 234, note.)

The respondent relies, however, upon the provisions of section 9 of chapter 270 of the act of 1847, which reads as follows: "Any railroad company receiving freight for transportation, shall be entitled to the same rights, and be subject to the same liabilities as common carriers.

Whenever two or more railroads are connected together, any company owning either of said roads, receiving freight to be transported to any place on the line of either of said roads so connected, shall be liable, as common carriers, for the delivery of such freight at such place. In case any such company shall become liable to pay any sum, by reason of the neglect or misconduct of any other company or companies, the company paying such sum may collect the same of the company or companies by whose neglect or misconduct it became so liable."

It is claimed, on the part of the respondent, that this act has changed the rule laid down in the case of *Van Santvoord* v. *St. John,* and, in effect, introduced the English doctrine, which implies an undertaking to carry through from the mere receipt of goods marked for a place beyond the route of the carrier.

On the other hand, it is claimed that the only effect of the act of 1847, is to give validity to contracts made by railroad companies for the transportation of freight to places beyond the terminus of their roads (the power to make such contracts having been questioned), and to define the character of the responsibility imposed by such contracts, and not to create a liability to carry through, when no contract to that effect was made.

The latter view of the statute received the sanction of this court in the case of *Burtis* v. *The Buffalo and State Line Railroad Company* (24 N. Y. R., 269.) In that case, there was an express contract to carry to the place of final destination, beyond the terminus of the route of the first carrier.

A majority of the court were of opinion that, independently of the statute, the company had the corporate power to make such a contract; but all the judges, save one, agreed that the statute removed all question on that point; and the majority concurred in the construction given to the statute in the prevailing opinion of DENIO, J., which is to the effect that it was not intended to impose the responsibility mentioned in the statute, upon any of the railroads against the

consent of the company owning them. That the language, " receiving freight to be transported to a place on the line of another road," limited the operation of the statute to cases of a company receiving property, and agreeing, expressly or by implication, to carry it to a place on another connecting road ; and that the meaning of the act was that, if a railroad company agreed to carry property beyond the terminus of its own road, and received the goods under such an agreement, it should be liable as a common carrier for the delinquencies of the road running in connection with it, on the route to the place of delivery.

This seems to us to be the natural construction of the statute.

The section in question, appears, on its face, to be intended as declaratory, rather than as introducing any new rule of law or evidence. It begins by declaring that " any railroad company receiving freight for transportation, should be entitled to the same rights, and be subject to the same liabilities as common carriers." This is purely declaratory.

The section then proceeds to declare the character of liability incurred by a railroad receiving goods to be transported to places beyond its own lines. Although now it seems to be conceded that such an undertaking, on the part of a railroad corporation chartered to run between points, is not *ultra vires,* yet before the passage of the act, much doubt had existed on that point. And it is not unreasonable to assume that the object of this act was to remove that doubt and declare what liability should result from such a contract.

Such an undertaking may be established by express contract, or by showing that the company held itself out as a carrier for the entire distance, or received freight for the entire distance, or other circumstances indicating an understanding that it was to carry through, but· at the time of the passage of the act of 1847, it had been settled by the case of *Van Santvoord* v. *St. John,* that the marks on the goods were not of themselves evidence of such an undertaking. This rule was understood by shippers and

acted upon by carriers. If the statute had intended to change it, it should have contained some specific language, which would warn carriers to decline to receive goods thus marked, unless they intended to assume responsibility for their carriage to the place indicated by the mark, however distant.

It was by confining the operation of the statute to the effect of the undertaking, when voluntarily assumed, that this court arrived at the conclusion in the case of *Burtis* v. *Buff. and S. L. R. R.* (24 N. Y., 269), that a carrier receiving goods under such an agreement was chargeable with the defaults of connecting roads beyond the limits of the State. The apparent injustice of holding a company subject to the liability declared by the statute, in cases where the provisions of the same statute giving a remedy over against the defaulting road could not operate, was obviated by holding that the liability is not imposed by the statute, but must be voluntarily assumed by the carrier. The result of this construction is, that in the absence of proof of an undertaking, express or implied, to carry the goods to their final destination, the statute has no application, and therefore the defendant was bound only for the due delivery of the goods to the next carrier on the route.

But there is a further ground for holding the statutory provision inapplicable to the present case. We are satisfied from a careful consideration of the language of the act of 1847, and of the apparent purposes of the provision in question, that it was intended to apply only to the company, which, in the first instance, receives the goods from the shipper, and that it does not refer to the various intermediate carriers into whose custody the goods may afterward come from time to time in the course of their journey. The shipper in the present case having made a contract with the company to whom he delivered the goods, expressly restricting its liability to the terminus of its own line, we think that the statute cannot be resorted to for the purpose of determing the character of the liability of the subsequent carriers. These views of the statute lead to a reversal of the judgment, on the

ground that the finding by the referee of a contract by the defendant to carry the property to Burr Oak is not sustained by evidence, and that the act of 1847 does not obviate that difficulty.

The judgment cannot be sustained on the ground that the evidence discloses unnecessary delay in delivering the goods to the Michigan Southern Company. The referee has expressly found that there was no such delay, and there was evidence in support of that finding. (See *Wiebert* v. *The N. Y. and Erie R. R. Co.*, 2 Kern., 245).

Nor did the failure of the defendant to deliver the invoice or way-bill with the goods and to take a receipt invalidate the delivery to the Michigan Southern Company. It is found that the goods were actually delivered to and duly received by that company at the usual place, and that the omission to deliver the way-bill and to take a receipt at the time, was not attributable to the default of the defendant, but to the temporary engagements of the agent of the Michigan Southern Company. The defendant was, by the delivery, divested of all control over the goods, and the Michigan Southern Company having taken them into its custody, became responsible for them as a common carrier, immediately upon their receipt and without the delivery of the way-bill, notwithstanding the usage between the companies to deliver it. The case of *Michaels* v. *The N. Y. Cen R. R. Co.* (30 N. Y., 564), is a direct authority on this point.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

CHURCH, Ch. J., ALLEN, GROVER, FOLGER and ANDREWS, JJ., concurred in result. PECKHAM, J., for affirmance.

Upon the question whether the act of 1847 renders the carrier liable for the transportation of the goods to the place for which they are marked, without further evidence of a contract, ALLEN and FOLGER, JJ., concur in the opinion; ANDREWS, J., does not vote; CHURCH, Ch. J., and GROVER J., dissent. CHURCH, Ch. J., ALLEN, GROVER and ANDREWS, JJ., concur that the act refers only to the carrier first receiving

the goods, and not to intermediate carriers. PECKHAM, J.,
dissents.

Judgment reversed. New trial ordered.