M. CLEILAND MILNOR *v.* THE NEW YORK & NEW HAVEN
R. R. Co.

A railroad corporation, incorporated under the laws of another State, but allowed
by our laws to extend and operate its road in this State, is subject to our laws
and within the prohibition of our statute against exercising corporate powers
beyond such as are expressly conferred by law or are necessary to the exercise
of the general powers conferred, and a contract made by them in violation of
such prohibition is *ultra vires* and void.

Defendants, a railroad corporation organized under the laws of Connecticut, for
the purpose of constructing a railroad from New Haven, by way of Bridgeport,
westerly to the line dividing the State of New York from Connecticut, were
afterwards, by a law of this State, authorized to extend their railroad into this
State. *Held,* that they came within the provisions of our law in respect to
domestic corporations, and that they could not, in this State, make a contract
for the carriage of passengers or their baggage beyond the limits of their own
road.

Where a railroad company assumes the duty of a carrier of freight and persons be-
tween certain points, established by their charter, and without special agreement
to the contrary, their obligation commences when the freight or passenger is
accepted for transportation, and terminates when safely delivered at the end of
their route, and they are only liable as forwarders beyond the end of their line,
unless under a lawful contract extending their liability.

The right of a passenger purchasing coupon tickets for different roads and sold at
the office of one, is precisely the same as if the tickets had been purchased at
the office of each road.

APPEAL by plaintiff from a judgment entered upon the de-
cision of a judge at trial term.

The defendants, a railroad corporation created under the
laws of the State of Connecticut to operate a railroad between
New Haven and the State line between New York and Con-
necticut, and by the laws of this State (Laws of 1846, chap.
195), authorized to extend their railroad into this State,
were sued for the loss of baggage, occurring by fire at Sheffield,
in the State of Massachusetts, by plaintiff, who had purchased
the usual coupon tickets sold by them in New York City,
for a passage from New York to Sheffield. These tickets

were printed on one slip of paper, and capable of being readily detached, and were in the following form:

| |
| --- |
| "NEW YORK & NEW HAVEN R. R."<br>Housatonic Check.<br>New York to Bridgeport.<br>Sheffield.                    JAS. H. HOYT. |
| HOUSATONIC RAILROAD.<br>Sheffield.<br>Change Cars at Bridgeport.<br>Good for this trip only.    H. D. AVERILL. |

Defendants also attached to the baggage of the plaintiff a railroad check marked as follows: [ H. R. R. 166. ]. The plaintiff was carried on the railroad of the defendants to Bridgeport, and there, with his baggage, was transferred to the Housatonic Railroad, and arrived at Sheffield. The train on that day was delayed by some unavoidable accident, and instead of arriving at 9.20 P. M., the regular time, did not arrive until about one o'clock at night. The baggage was taken into the depot of the Housatonic Company there, and about an hour after the arrival of the train at Sheffield was accidentally destroyed by a fire which consumed the depot and contents.

The other facts necessary to an understanding of the case are stated in the opinion.

*W. S. Palmer*, for appellant.

*Calvin G. Child*, for respondents.

BY THE COURT.*—ROBINSON, J. [after stating the above facts].—The statement of facts discloses that defendants operate a railroad between New York city and New Haven, which, at Bridgeport, connects with the Housatonic railroad, operated by the Housatonic Railroad Company between Bridgeport and Pittsfield, Massachusetts, passing through Sheffield; that for the convenience of passengers and themselves, and by agree-

* Present, ROBINSON and LARREMORE, JJ.

ment between the defendants and the Housatonic Company, the defendants sold through tickets from New York to Sheffield, at the rate of $3 60 per ticket, out of which they deducted $1 70, their share, and paid the balance to the Housatonic Company, and it was under this arrangement that the ticket in question was sold.

The judge who tried this cause, without a jury, under these facts found as matters of law, that the defendants sold the ticket from Bridgeport to Sheffield as the agent of the Housatonic Company, and checked the baggage as such agent.

The main exceptions are to these conclusions of law from the facts stated. There do not appear any other special circumstances tending to fix any other liability upon the defendants, or to show that they in any other way agreed to carry the passenger or his baggage from Bridgeport to Sheffield, than that upon application for such passage tickets, those mentioned were sold to him, and his baggage was thereupon checked with a check of the Housatonic Company. Although the defendants are not a corporation of this State, and are only through the comity of the laws of the State authorized to extend and operate their road therein, they are yet within the prohibition of our statute against exercising corporate powers beyond such as are expressly conferred by law, or are necessary to the exercise of the general powers conferred (1 R. S. 600, § 3), and are prohibited from maintaining suits for, or in respect to, any such acts (2 R. S. 457, § 2). Public policy would also debar any actions against them for acts done here, in violation of the prohibitions of our statutes against domestic corporations. All persons dealing with corporations are bound to take notice or have knowledge of their corporate powers, as they must exist in positive statute.

The defendants, as appears from the act of 1846, were incorporated for the purpose of constructing a railroad from New New Haven, by way of Bridgeport, westerly to the line dividing the State of Connecticut from New York, and there is nothing in the evidence offered in the present case indicating that they ran their cars over any part of the Housatonic road between Bridgeport and Sheffield, or even exercised the functions of common carriers thereon.

The act of 1847, chap. 270, § 9, provides that any railroad receiving freight for transportation (meaning necessarily within the scope of its corporate powers) shall be entitled to the same rights and be subject to the same liabilities as common carriers, and further authorizes it to make contracts for carrying freight to any place upon the line of any connecting railroad. Where they do run their cars and transact business upon the lines of other roads, they have been held to a like responsibility upon contracts relating thereto (*Hart* v. *Rens. & Sar. R. R. Co.* 8 N. Y. 37), but I am unable, under these expresss limitations and prohibitions, to discover any other general powers in railroad corporations, as common carriers of passengers, to contract for transporting *passengers* beyond the line of their own road, although in some cases they are required to purchase and sell tickets of other carriers (see act of 1868, chap. 573 ; 7 R. S. (Edm. ed.) 317).

The contract between the defendants and the Housatonic Company did not establish any community of interests or profits between them ; it had only relation to the respective charges, or rather the proportionate division of the charge or amount, to be exacted from the through passenger to be carried from the line of the one to some other place on that of the other. The coupon tickets sold in the present case sufficiently evidence such separate undertaking, and that they had each been issued under authority of the respective companies. They constituted full notice, if such were necessary, of the separate obligations of the several companies. The case of *Hood* v. *The New York & New Haven Railroad Company*, 22 Conn. 1, though much criticised as a restriction upon railroad corporations in contracting for the carrying of freight or passengers beyond their *termini*, is yet authoritative as a construction by the courts of Connecticut upon the corporate powers of the defendants, and that they had not the unrestricted powers of contracting as common carriers at large, and has been followed in *Converse* v. *Norwich & N. Y. Trans. Co.* 33 Conn. 166.

Irrespective of these considerations limiting the operation of contracts made by railroad corporations, as *ultra vires*, it would seem to be well settled that in the ordinary assumption of the duty of a carrier of freight and persons between certain

points established by their charter, and without special agree-ment to the contrary, their obligation commences when the freight or passenger is accepted for transportation, and termi-nates when safely delivered at the end of its route, and it is only liable as forwarder beyond the end of its line, unless un-der a lawful contract extending its liability as carrier (Redf. on Com. Car. §§ 181–183 ; *Burroughs* v. *N. & W. R. R. Co.* 100 Mass. 26 ; *Hempstead* v. *N. Y. Central R. R. Co.* 28 Barb. 485 ; *Dillon* v. *N. Y. & Erie R. R. Co.* 1 Hilt. 231 ; *Salinger* v. *Simmons*, 2 Lans. 497). As to the right of a passenger pur-chasing coupon tickets for different roads, and sold at the office of one, it is precisely the same as if the tickets had been pur-chased at the office of each road (2 Redf. on R. R. § 185 ; *Schopman* v. *Bost. & Wor. R. R. Co.* 9 Cush. 24 ; *Sprague* v. *Smith*, 29 Verm. 421 ; *Knight* v. *P. S. & P. R. Co.* 56 Maine, 234 ; 2 Redf. Am. R. R. Ca. 458 ; *Straiton* v. *N. Y & N. H. R. R. Co.* 2 E. D. Smith, 184 ; *Root* v. *Gt. Western R. R. Co.* 45 N. Y. 524).

Under these considerations the judgment should be affirmed, with costs.

Judgment affirmed.