P. H. CHERRY, Respondent, v. KANSAS CITY, FORT SCOTT & MEMPHIS RAILWAY·COMPANY, Appellant.

Kansas City Court of Appeals, March 4, 1895.

1. **Appellate Practice:** FORMER APPEAL: RES ADJUDICATA. When a case has been decided in an appellate court upon solemn argument and comes again to such court only such questions will be noticed as were not determined in the previous appeal; matters passed upon are *res adjudicata.*

2. **Passenger Carrier:** SPECIAL CONTRACT: LIABILITY ON CONNECTING LINE. Defendant sold plaintiff a ticket from Lamar "good for a first class passage to Grandin and return" to be signed in the presence of defendant's agent at destination in order for the return trip. Grandin was beyond defendant's line and at the eastern terminus of the Current River railroad, a distinct corporation with officers and equipment of its own. *Held,* that defendant was liable for the act of the conductor of the latter railroad in wrongfully ejecting plaintiff from its car as the special contract in the ticket made the Current River railroad *pro hac vice* the agent of the defendant. *Smith v. Railroad,* 85 Mo. 418, *doubted and distinguished;* other cases collected and discussed.

3. ———: TICKET: LIABILITY BEYOND LINE. A railway company may, in its passenger tickets provide against liability for wrongs happening beyond its own line; but where by its maps and tickets it holds out that it·is operating another road as a part of its own and invites travel over it and the passenger enters into contract by purchasing its ticket, it will be liable to him for wrongful ejectment on any part of the line between the points designated in his ticket, although it neither actually owns or controls the road at that point.

4. ———: ———: ———: ULTRA VIRES. In the above state of facts, the railroad can not escape liability on the ground that its contract was *ultra vires.*

5. ———: WRONGFUL EJECTMENT: DAMAGES. An instruction on the measure of damages expressly limiting plaintiff's right to recover compensatory damages only for wrongful ejectment of a passenger is approved.

6. ———: ———: EVIDENCE. A folder issued after the alleged injury, while improperly admitted, is *held*, harmless, as being only cumulative.

*Appeal from the Barton Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

*Wallace Pratt* and *J. C. Cravens* for appellant.

(1) If, under the most favorable view which can be taken of the plaintiff's evidence, he is entitled to any remedy—which defendant denies—it is not to be found in action in tort for his expulsion, but on the contract for the value of the surrendered ticket. *Fredrick v. Railroad*, 37 Mich. 346; *Townsend v. Railroad*, 56 N. Y. 295; *Marshall v. Railroad*, 78 Mo. 616; *Yorton v. Railroad*, 54 Wis. 234; *Hall v. Railroad*, 15 Fed. Rep. 58; *Gantts v. Railroad*, 39 Kan. 608; *Bradshaw v. Railroad*, 135 Mass. 407; *Shelton v. Railroad*, 29 Ohio St. 214. (2) The documentary and undisputed evidence shows conclusively that the defendant was not and could not by any act or representation of its officers or managers without a vote of its stock holders, either own or operate the Current River railroad, which by the like documentary evidence is shown to have been an entirely separate and distinct corporation. The several certificates and articles of association of these companies show them to have been as separate and distinct in everything that constitutes artificial persons as any other two railroad companies in the land. And it appearing that the alleged trespass was committed by the conductor of the Current River road on its line, from

its train, after the plaintiff had left defendant's road defendant can not in any wise be held responsible in this action. The evidence here is clear and undisputed that the defendant had no authority or control whatever over the conductor on the Current River railroad. Cooley's Torts [2 Ed.], 622; Webb's Pollock on Torts, 90; Woods, Master and Servant, 281, 306, 313; *Paint Co. v. Conlon*, 92 Mo. 229; *Kendall v. Cushman*, 103 Mass. 194; *Goss v. Railroad*, 99 Mass. 220; *Schweickhart v. St. Louis*, 2 Mo. App. 571; *Darling v. Railroad*, 11 Allen, 295; *Ellsworth v. Tartt*, 26 Ala. 733; *Smith v. Railroad*, 85 Mo. 418. (3) Railroads are public highways and common carriers under the constitution and laws of Missouri. They are required to keep public offices and are amenable to the police powers of the state. Const. Mo., art. 12, secs. 14, 15; R. S., secs. 2630, 2631; R. S., sec. 2542; R. S., sec. 2568, p. 648. Defendant could not be chargeable with operating the road of the Current River Railroad Company except as lessee pursuant to law. Not a single fact has been shown by plaintiff, even tending to bring this defendant under the operation of this statute as lessee. *Main v. Railroad*, 18 Mo. App. 388; *Smith v. Railroad*, 61 Mo. 17; *Cousins v. Railroad*, 66 Mo. 575. (4) The form of the ticket amounts to nothing as the evidence shows. It may have been an unusual form. But what of that. The Current River railroad being a short and unimportant line connecting with the defendant as it does— the ticket might with perfect consistency and propriety be in form of the one at bar. In no event could the form of the ticket change the law or be evidence of a lease, when the law strictly provides what shall be done in order for one company to purchase or lease the road of another company, and provides that the evidence of such an arrangement shall become a public archive. In the absence of such proof or the attempt to secure

it, if any such there be, mere puffing or advertising will not be considered as such proof. (5) The local folder and map put in evidence by plaintiff were irrelevant and incompetent evidence.

*H. C. Timmonds* for respondent.

(1) The first five propositions submitted by appellant in its brief and argument, were decided against it by this court when the case was here before; or held not to be applicable to this case. *Cherry v. Railroad,* 52 Mo. App. 499. Therefore the right of plaintiff to ride, and the liability of the defendant for damages in this case, are *res adjudicata. Rice v. McFarland,* 41 Mo. App. 490; *Leeser v. Boekhoff,* 38 Mo. App. 445. (2) Appellant suggests that any attempt;on the part of defendant's officers to operate another road as defendant's lessee, without the consent of its stockholders, would be contrary to law, *ultra vires,* and void. Verily, this is pleading the baby act with a vengeance! All railroad companies may contract with each other, or with corporations in any manner not inconsistent with the scope, object and purpose of their creation and management. R. S., sec. 2588. Defendant can not dispute its liability on the ground that it was wrongfully operating the road. *McCluer v. Railroad,* 13 Gray (Mass.), 124. (3) It is now well settled that railroad corporations have authority to contract for the transportation of passengers and goods beyond their own lines; that the power is implied in their general corporate powers. The contracing carrier becomes the principal, thus making the connecting lines its own agent, and thus making itself responsible for the whole distance. *Wyman v. Railroad,* 4 Mo. App. 35; Schouler's Bailments and Carriers, secs. 590, 591, 593, 594, 600, 615. (4) Appellant's only objection to instruction

number 2, given on behalf of plaintiff, is that it allows vindictive damages. On the contrary, it excludes vindictive, and only allows compensatory damages. Compensatory damages may be awarded, in cases of assault or trespass, for wounded feelings, indignity and insult. *McGinnis v. Railroad*, 21 Mo. App. 410; 3 Sutherland on Damages, 256; 36 Wisconsin, 657; *Cross v. Railroad*, 56 Mo App. 665. A passenger may properly resist a wrongful ejectment; and the fact that he does not resist will not prevent him from recovering damages. Schouler on Carriers, sec. 658; *English v. Canal Co.*, 66 N. Y. 454; *Hufford v. Railroad* 53 Mich. 118; s. c., N. W. Rep. 544.

SMITH, P. J.—This is an action brought by plaintiff against defendant company to recover damages for the wrongful expulsion of the former from a car of one of the passenger trains of the latter. The case was brought here on appeal by the plaintiff on another occasion, when the judgment was reversed and the cause remanded. By reference to the report of the case, to be found in 52 Mo. App. 499, it will be seen that it was then decided by us that, upon the evidence adduced by plaintiff, he was entitled to a submission of the cause to the jury.

By an examination of the record now before us, it is perceived that every question it presents for our decision, except those which we shall hereafter notice, was determined adversely to the defendant's contention on the former appeal. The plaintiff's evidence in the present case does not differ from that in the former, except that it is much stronger, so that the questions arising and determined by us in the former appeal, must be considered in the present one as *res adjudicata*. The well settled rule of appellate decision now is, that when a case has been decided upon solemn argument

and again comes to such court by appeal, or writ of error, only such questions will be noticed as were not determined in the previous decision. Whatever was passed upon must be regarded as *res adjudicata*. *Hombs v. Corbin*, 34 Mo. App. 393; *Conroy v. Iron Works*, 75 Mo. 651; *Bank v. Taylor*, 62 Mo. 338; *Overall v. Ellis*, 38 Mo. 209; *United States v. 422 Casks of Wine*, 1 Pet. 547; *Wright v. Snell*, 2 Black, 544.

But in the record now before us, it appears that the defendant introduced, at the trial, evidence incontrovertibly showing that the defendant is a corporation distinct from that of the "Current River railroad,"— that these corporations are distinct legal entities. It further appears that the latter, through its own officers, agents and servants, operates its line of railroad, which extends from Willow Springs to Grandin, and that said line is not operated by the defendant company, although the two lines are connected at Willow Springs, so that cars may be moved from the line of either upon the other. It further appears that, by some sort of an agreement between the two companies, which is not contained in the record before us, *a traffic arrangement existed, for the carrying of the freight and passengers by the one over the line of the other*. So that either company could issue bills of lading for freight or sell tickets for the carrying of passengers from any point on its own line to any point on the line of the other.

It further seems, from the ticket sold to the plaintiff by defendant's station agent at Lamar, and other evidence, that defendant, in consideration of the sum of $10, paid to its said agent by plaintiff, agreed to carry the plaintiff from that station to Grandin, the eastern terminus of the Current River railroad. The ticket sold the plaintiff makes no mention of the Current River railroad. It recites that it is issued by

defendant and is "good for a first class passage to Grandin and return." There is thereto attached a going and returning coupon, from Lamar to Grandin and from the latter station to the former. These coupons recite that they were issued by defendant and "good to stop off at all points." No reference is made in them to the Current River railroad. It recited in the face of the ticket that it "will not be honored for return passage unless signed on the back by the original purchaser in the presence of the *agent of defendant at destination.* The plaintiff, while riding in one of the passenger cars of the Current River railroad between Willow Springs and Grandin was wrongfully ejected therefrom by the conductor in charge of the train.

The question with which we are thus brought face to face is whether the defendant is liable for such wrongful expulsion of plaintiff by the conductor of the Current River railroad. Upon this branch of the case, the defendant asked and the court refused to declare the law to be that: "It appears from the undisputed evidence in this case that the Current River railroad is owned by a separate and independent corporation with different stockholders from the defendant company and that each of said corporations, as such, has power to employ, discharge and otherwise control its own servants, respectively, and although the jury may believe from the evidence that the defendant did sell to plaintiff a round trip ticket with stop-over privileges from Lamar on its road, to Grandin on said Current River road, and return, yet if they further believe that said ticket was wrongfully taken up and said plaintiff wrongfully ejected by the conductor of said Current River road, after he had left defendant's road, and that defendant company had no control over said conductor and neither employed him or paid him for

his services, then he was not the servant of the defendant and it is not responsible for his acts, although both of said companies may have had the same persons employed to fill their several general offices, and your verdict in such case should be for the defendant.''

We are not of the opinion that the trial court erred in refusing this instruction. The ticket thus issued by defendant to plaintiff is evidence of the contract made by the former with the latter and, in effect, speaks this language: "If you will buy this ticket, we will carry you safely to Grandin and also bring you safely back. You pay through each way and you shall be carried accordingly. Whether we run our own cars through, or take those of the Current River railroad at the point of intersection, we guarantee your safe arrival at the point of destination, and return.'' This amounts to an implied special contract. *Railroad v. Copeland*, 24 Ill. 338; *Railroad v. Combs*, 70 Ga. 533; *Quimby v. Vanderbilt*, 17 N. Y. 306; *Kessler v. Railroad*, 7 Lansing (N. Y.), 62; 2 Woods, Railway Law, 1394. If a railway, as in this case, chooses to contract to carry passengers, not only over their own line, but also over the line of another company, either in whole or in part, the company so contracting incurs the liability which would attach to them if they had contracted solely to carry over their own line. *Railroad v. Blake*, 7 Hurlst. & N. 987; *Quimby v. Vanderbilt*, 17 N. Y. *supra; Chollith v. Railroad*, 26 Neb. 159; *Carter v. Peck*, 4 Sneed, 203; *Bissell v. Railroad*, 22 N. Y. 258; *Stetler v. Railroad*, 49 Wis. 609; Ray's Negl. of Imposed Duties, 526; Schouler's Bail. & Carriers, sec. 615.

In *Washington v. Railroad*, 101 North Car. 239, it is said, that an arrangement entered into among roads which by their union form a route between distant *termini* to facilitate transportation, each acting as for-

warding agent for the others at the points of connection, does not of itself, and especially when the common liability is disclaimed in the freight bill or passenger ticket, render each liable for the default of the other; citing, *Phifer v. Railroad*, 89 N. C. 314; *Weinbery v. Railroad*, 91 N. C. 31; *Knott v. Railroad*, 98, N. C. 73.   In the same connection it is also said that it is not less well settled that, where there is a special contract to transport to a point beyond the contracting company's line, the companies whose services are required in the execution of the contract become an agency severally of the first in fulfilling its terms and giving it effect.   The court also quotes from Thompson on Carriers, 431, to the effect: "The weight of authority is that if a carrier undertakes to carry a passenger and his baggage to a certain destination, he is responsible for his safety and that of his baggage, as carrier, throughout the whole distance, whether the franchise and means of conveyance where the injury or loss occurs be owned or controlled by him or some other carrier."   "This liability," is the legal result of a special contract to convey between designated points and to provide adequate means of conveyance over the route between them."   In such case, the defendant's liability is commensurate with its agreement, covering the entire transportation, and the company whose services are required in the execution of the special contract and its agents become, *pro hac vice*, the defendant's agents in consummating it.   And, as said in *Peters v. Rylands*, 20 Pa. St. 467: "As between him (the carrier) and the passenger, the means of transportation become his.   *Pro hac vice*, the locomotive, and the engineer, are his engine and engineer, and logically, as well as on the principles of the adjudged cases, he is responsible for their conduct.   *   *   *   He holds himself out to the world as furnished with

such means of transportation, and invites the confidence of the public in his ability to carry safely. The passenger looks to him.  *  *  *  He pays his money and risks his life, because he has faith in the transportator's capacity to carry him safely. On what principle, then, at all consistent with the actual relations established between the parties, is the passenger to be denied redress for injury resulting from negligent performance of this contract." In *Wheeler v. Railway*, 31 Cal. 46, it was ruled that railroad companies, as common carriers, may make valid contracts to carry passengers beyond the limits of their own line and thus become liable for the acts and neglects of other carriers, in no sense under their control, and this is so, even without any actual arrangement with the connecting lines, if by their agents they hold themselves out to the public as common carriers to a place beyond the limits of their own line, as the folders, maps, etc., offered in evidence show was the case here. And this ruling is in line with the following cases: *Lock Co. v. Railroad*, 48 Vt. 339; *Railway v. Copeland*, 24 Ill. 332; *Railway v. Johnson*, 34 Ill. 389; *Wilcox v. Parmelee*, 3 Sandf. 610; *Leech v. Railroad*, 18 Pa. St. 224; *Noyes v. Railroad*, 27 Vermont, 110; *Bennett v. Filyan*, 8 Fla. 403; *Teale v. Sears*, 9 Barb. 317; *Wyman v. Railroad*, 4 Mo. App. 35.

In Wisconsin it has been ruled that where a railroad company sells a through ticket by a specified route to a point outside of the state over lines not its own, that the undertaking of selling the ticket is to transport the passenger and his baggage safely to such place of destination, and that it is liable to him for any injury to his person or baggage occurring on any of the connecting lines. *Carder v. Railroad*, 21 Wis. 582. In a Maine case, *Knight v. Railroad*, 56 Maine, 234, it was held that where through tickets in the form of coupons

are sold by a railroad, they are to be regarded as distinct tickets over each road and the road that sold them, as the agent of the other roads. In such case, the rights and liabilities of the parties are the same as if the purchase had been made of the agent at their station. And to the same purport are: *Schopman v. Railroad*, 9 Cush. 24; *Hood v. Railroad*, 22 Conn. 1; *Sprague v. Smith*, 29 Vt. 421; *Milnor v. Railroad*, 4 Daly, 355; *Knight v. Railroad*, 56 Maine, 234; *Root v. Railroad*, 45 N. Y. 524; 2 Redfield on Railroad, section 185.

It seems quite clear to us that, both upon reason and authority, the defendant must be held liable for the injury complained of. The coupons attached to the ticket sold the plaintiff give no intimation that they were the tickets of the Current River railroad, or that they were sold or purchased with any such understanding. The ticket was issued and sold by defendant over its own road from Lamar to Grandin. The plaintiff did not buy a ticket to Grandin, over the defendant's road and the Current River railroad. The ticket evidences a contract between plaintiff and defendant to carry the former over its own line and in its own cars, manned by its own employees, from Lamar to Grandin and return. The plaintiff could not return on his ticket without first signing it in the presence of defendant's agent at Grandin. While the employees operating the train from which the plaintiff was expelled may have been those of the Current River railway, yet, in view of the character of the ticket, and the conduct of the Current River railway employees in receiving plaintiff into their coaches and in recognizing the plaintiff's rights in the first instance to ride on the ticket, we must think that the conductor who so wrongfully ejected plaintiff from the car in which he was riding on the Current River railroad, was *pro hac vice* the agent

and servant of the defendant operating its train and, as such, liable for the wrongful act complained of. We can not see but that, as to the plaintiff, this conductor was as much the defendant's agent and servant, as if he had been conducting a train on defendant's own line.   The defendant, by its contract, made, as to plaintiff, the Current River railroad a part of its own line and necessarily the conductor, in ejecting the latter, its own agent and servant.

No doubt a railway company, in contracting for the carriage of passengers over lines beyond the terminus of its own, could, if it chose to do so, through tickets in the form of coupons or in some other way, provide against liability for wrongs happening to such passengers on lines other than its own. But where a railway, as is the case here, by its maps and tickets, holds out to the public that it is operating another railroad, as a part of its own, and thus invites travel over it, and the passenger thereupon enters into a contract with it, as appears by the ticket sold to him by it, and while traveling on such ticket he is wrongfully ejected from the cars on any part of the line between the points designated in the ticket, it can not be permitted to claim exemption from liability for such wrong, even if the same occurred in that part of the line which it neither actually owns nor controls.

The defendant further contends that under the ruling in *Smith v. Railrod*, 85 Mo. 418, it can not be held liable for the act of the conductor of the Current River railroad in ejecting plaintiff from its train.   The soundness of the ruling there made is very questionable, as will be seen by reference to the very able dissenting opinion of Judge BLACK.   But accepting, as we must, the majority ruling as binding on us, yet we do not think the case in point.   The facts in the present case are dissimilar to those in that.   The ticket was not

sold by the "Frisco Road," over the Missouri Pacific, but by the latter over its own road. There was no special contract in that case, as in this, and hence the supposed analogy does not exist.

The conductor of the Current River railroad who violently ejected plaintiff from his train became, as we have seen, as to the plaintiff, under this special contract, the agent of the defendant, and in consequence of which, we think upon principle the latter is liable to the former for the injury resulting. *Travers v. Railroad*, 63 Mo. 420; *Brown v. Railroad*, 66 Mo. 588. Since according to the views we have already expressed, the defendant is liable to plaintiff to the same extent as if the wrong complained of had happened on its own line, the defendant was liable at the election of plaintiff either for the wrongful expulsion, or for breach of the contract.

The defendant further contends that any attempt of its officers to operate the Current River railroad, without the consent of its stockholders, would be *ultra vires*. This may be true, but it is equally true that railroad companies in this state, under the statutory grant of authority, may contract with each other in any manner not inconsistent with the scope, object and purpose of their creation and management. R. S., sec. 2588. And without this statute, the common law authority to enter into such contracts is of almost universal recognition. And where they make contracts to carry beyond the limits of their own line, they thus became liable for the acts and neglects of the others in no sense under their control, and the company so bound by the contract to carry beyond its own line, can not defend on the ground that the contract is *ultra vires*. *Wheeler v. Railroad*, 3 Cal. 46; *Noyes v. Railroad*, 27 Vt. 111; *Root v. Railroad*, 45 N. Y. 524; Schouler's Bail. & Car., section 593. And in such case the public has the right

to assume the contracting company has made all the arrangements necessary to a proper fulfillment of the obligations it assumes under its contract. Schouler's Bail. & Car., section 594, and cases there cited. Without pursuing the inquiry, it is sufficient to say that we are unable to discover that the defendant is exempt from liability on any ground.

Defendant further objects that the court erred in giving plaintiff's second instruction in relation to the measure of damages, which was to the effect that if they found in favor of the plaintiff, to assess his damages at such sum, not exceeding one thousand dollars, as they believed from the evidence would reasonably compensate him for the money necessarily paid out by him, if any, to finish his journey to Grandin; and for the trouble and inconvenience caused him, if any, by reason of being ejected from the car; and for the injury to his feelings, if any, including humiliation, insult and indignity, caused by reason of being ejected from the car. This instruction expressly limited the plaintiff's right of recovery to compensatory damages and is, we think, unexceptionable in its enunciation. *McGinnis v. Railroad*, 21 Mo. App. 399; *Randolph v. Railroad*, 18 Mo. App. 609; *Rouse v. Railroad*, 41 Mo. App. 298; *Fell v. Coal Mining Co.*, 23 Mo. App. 216; *Craker v. Railroad*, 36 Wis. 676; Hutchinson on Carriers, section 810; Sutherland on Dam., vol. 1, p. 734, and vol. 2, pp. 259–260. No error is perceived in the action of the court in the giving or refusal of instructions in respect to the measure of damages.

The defendant complains of the action of the court in admitting in evidence a certain folder and map issued by it. It does not appear that the map was improperly admitted. It does not show on its face that it was issued at a date subsequent to the accrual of plaintiff's cause of action, as defendant states. The

folder, however, does show that it was issued in 1893, and should not have been admitted. It was, however, only cumulative evidence. If the map and folder had both been improperly admitted, we should not, in view of the other evidence, feel justified in reversing the judgment on that account since we can not see that the result would have been different had they been excluded.

It results inevitably from the foregoing considerations, that the judgment of the circuit court must be affirmed. All concur.