### JEREMIAH DUNN v. PENNSYLVANIA RAILROAD COMPANY.

Argued February 23, 1904—Decided June 13, 1904.

The plaintiff, while a passenger on the defendant's train, was injured in a collision between the train and two freight cars standing on the track. These cars had escaped from a freight yard near the passenger tracks about twenty minutes before the collision. The railroad and its appurtenances, including the freight yard, belonged to another corporation, but were used in common by the defendant and a third company. The tracks in the freight yard had a descending grade toward the place of collision, and the defendant claimed that the escape of .the cars resulted from their being struck by a drill engine of the third company, through the negligence of the engine driver. *Held*, that the defendant's duty to

its passengers required it to foresee the danger of such an occurrence and to provide means for its prevention, and, since it had provided no means except the care of those engaged in the yard, it was chargeable with their negligence.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON, GARRISON and SWAYZE.

For the plaintiff, *Patrick H. Gilhooly.*

For the defendant, *Alan H. Strong.*

The opinion of the court was delivered by

DIXON, J. About ten o'clock in the evening of July 17th, 1900, the plaintiff was a passenger on a train of the Pennsylvania Railroad Company, the defendant, traveling northward from Long Branch. As the train approached Red Bank it ran into two freight cars which had escaped from the southerly end of the freight yard at Red Bank, about twenty minutes before the collision, and were then on the northbound passenger track. The present suit was brought to recover compensation for the injuries sustained by the plaintiff in that accident.

At the trial in the Union Circuit, the testimony showed that for several miles both north and south of the place of collision the railroad, including sidings, engine-houses, depots and other fixed appurtenances, was the property of the New York and Long Branch Railroad Company; that under an arrangement between that company and the Central Railroad Company of New Jersey, the Pennsylvania Railroad Company and the New Jersey Southern Railroad Company, the Long Branch company was to put and maintain the railroad in first-class condition for traffic and was to employ the proper switchmen, station agents, flagmen, laborers, &c.; that the Pennsylvania company was to have the full, free and uninterrupted use of the railroad and all facilities connected there-

with, in common with the Central company and the Southern company; that the trains of the Central company and the Pennsylvania company were to be run upon a schedule arranged by those companies, and were to be moved under the order of the superintendent of the Long Branch company and subject to its rules and regulations; and that the officers, agents and employes of the Long Branch company were to be satisfactory to the Central and Pennsylvania companies; were to give the same attention and care to the business of one of those companies as to that of the other, and were to be removed in case of proved neglect, misconduct or partiality in performance of their duties.

The evidence also tended to show that an engine of the Central company had been drilling cars in the freight yard at Red Bank up to the time when these two freight cars moved out of the yard; that the track on the southerly half of the yard had a grade descending toward the passenger line, so that cars started there with the brakes off would run by gravity down upon the northbound passenger track, and that, even if the brakes were on, a violent jar might loosen the brakes and cause the same thing to happen.

On this evidence the Pennsylvania company claimed that the collision resulted from.the negligence of the Central company's employes in charge of the drill engine, which must have started the vagrant cars on the downward grade, and the trial judge charged that, even if that was the case, the Pennsylvania company would be responsible to the plaintiff. Because of this charge the Pennsylvania company moves for a new trial.

A leading case on this subject is *Great Western Railway Co.* ads. *Blake,* 7 *Hurlst. & N.* 986, decided in 1862 by the Exchequer Chamber. There, under an agreement between the Great Western company and the South Wales Railway Company, the railroad of the latter company was used by both. Blake was a passenger on the train of the Great Western company, which ran into an engine of the South Wales company negligently left on the track by the employes of that company. The suit was brought to recover compen-

sation for injuries suffered in the collision, and the jury were instructed that the carrying company, the defendant, was responsible to its passengers for that improper act of the other company's agents. The Exchequer Chamber held that this instruction was correct, and laid down the rule that the responsibility of the carrying company to its passengers, in case of such common use, was the same as if it alone used the line, and bound the company to the exercise of due care for the maintenance of the whole line in proper condition, in the discharge of which obligation the other company and its agents were to be deemed subordinate agents of the carrying company.

This was followed by the Queen's Bench, in *Buxton* v. *Northeastern Railroad Co., L. R., 3 Q. B.* 549, where the defect was in the fence guarding the line from straying cattle, and later by the same court and the Exchequer Chamber in *Thomas* v. *Rhymney Railroad Co., L. R., 5 Q. B.* 226; *S. C., L. R., 6 Q. B.* 266, where the facts were similar to those in Blake's Case. In these two later cases the common use was under a special act of parliament.

In *Wright* v. *Midland Railway Co., L. R., 8 Exch.* 137, the negligent company had statutory authority to use the defendant's line, and its employes drove their engine into the defendant's train in disregard of the signals duly given by the defendant's agents. The Court of Exchequer held the defendant not responsible to its passengers for injuries so caused. The judges attempted to distinguish this case from those preceding it, in which, they said, the courts had decided only that the carrying company contracted for the exercise of due care by all persons connected with the carrying and with the means and appliances used in carrying the passengers, while in the pending case it was considered that the negligent engine driver was not so connected. This decision is supported by the earlier case of *Sprague* v. *Smith,* 29 *Vt.* 421 (1857), in which Chief Justice Redfield delivered an opinion holding that the carrying company was not liable for an injury to its passengers caused by the engine of another company negligently driven into the rear of its train.

Whether there is any substantial distinction between the connection of the outside company with the carrying train and the track, when its agents negligently interpose an obstacle to the forward movement of the train, and such connection when they negligently drive an engine against the train, I doubt. The distinction was not recognized in *Murray* v. *Lehigh Valley Railroad Co.*, 66 *Conn.* 512, where a train of the outside company ran up so close to the rear of the defendant's train that one of the defendant's passengers in fear leaped from its train and was hurt.

The general doctrine announced in Blake's case was enforced in *Little* ads. *Dusenberry*, 17 *Vroom* 614, where our Court of Errors held the Central company responsible to its passengers for a defect in this same railroad which the Long Branch company should have remedied. It was also enforced in *Pennsylvania Railroad Co.* v. *Roy*, 102 *U. S.* 451, where the railroad company was deemed accountable to the passenger for a defect in a Pullman car, although he had purchased a separate ticket for such a car from the Pullman company.

But even if the suggested distinction exists, the decision in Blake's Case covers the present circumstances, for here, as there, the negligence of the outside company caused the obstruction of the track which resulted in the collision.

In a still narrower view of obligation the responsibility of the defendant was shown. The likelihood that in the ordinary transaction of business in the Red Bank freight yard cars would escape and run down the descending grade to the passenger tracks, was one which reasonable foresight should have perceived, and it was plainly within the duty owed by the carrying company to its passengers to make adequate provision against such an occurrence. *Smith* v. *New York, Susquehanna and Western Railroad Co.*, 17 *Vroom* 7; *Union Pacific Railroad Co.* v. *Harris*, 158 *U. S.* 326. To guard against that danger the company relied wholly on the persons employed in the yard, and consequently they became the agents selected by the company for the fulfillment of its obligation. If they failed through negligence the company's

duty was not performed, and liability for the probable results, of course, ensued.

We are of opinion that in this feature of the case there is no reason for disturbing the verdict.

The only other objection noticed in the brief of counsel is the amount of damages awarded.

A majority of the judges think that those damages are excessive, because the present ailments of the plaintiff are not shown to have resulted from the accident; but if the plaintiff will remit $1,500 of the damages awarded, the rule for a new trial will be discharged; otherwise it will be made absolute.